UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

-----------------------------------------------------------x

| | |
|---|---|
| In re: Subpoenas Issued to CVS Pharmacy, Inc., ) <br> ) <br> In the Matter of ) <br> ) <br> RUSH INDUSTRIES, INC., ) <br> Plaintiff, ) <br> ) <br> -v- ) <br> ) <br> GARNIER LLC, AND JOHN DOES 1-5, ) <br> ) <br> Defendants. ) | CIVIL ACTION NO.: 06-107ML <br> [pending EDNY 05-4910] |

-----------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO CVS PHARMACY INC.'S MOTION TO QUASH THE SUBPOENA PURSUANT TO FED. R. CIV. P. 45(c) OR FOR A PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(c) AND IN SUPPORT OF RUSH INDUSTRIES' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**

RUSH INDUSTRIES, INC. (hereinafter, "Rush") respectfully submits this memorandum of law in opposition to CVS PHARMACY, INC.'s (hereinafter "CVS") motion to quash the subpoena pursuant to Fed. R .Civ. P. 45(c) or for a protective order pursuant to Fed. R. Civ. P. 26(c) and in support of Rush's Motion to Compel the Production of CVS' documents responsive to the subpoena duces tecum served on November 8, 2006.

# TABLE OF CONTENTS


| | Page |
|---|---|
| TABLE OF AUTHORITIES | i |
| I. BACKGROUND | 2 |
| A. The New York Action | 2 |
| B. The Status of Discovery in the New York Action | 3 |
| C. CVS' Involvement and the Subpoena to CVS | 3 |
| D. CVS' Present Motion to Quash | 6 |
| II. SUMMARY OF THE ARGUMENT | 6 |
| III. ARGUMENT | 7 |
| A. The Required Discovery is Relevant to Rush's Pending Trademark Infringement Action Against Garnier and Should Be Allowed | 7 |
| 1. The subpoena deposition topics are directed to relevant and necessary information and are not unduly burdensome | 8 |
| Deposition Topics 1, 2, 10, 11, 17, 30 and 32-34 | 8 |
| Deposition Topic 3 | 9 |
| Deposition Topics 5, 36 | 9 |
| Deposition Topic 6 | 10 |
| Deposition Topics 7-9, 19, 35, 43 and 46 | 10 |
| Deposition Topics 13-15 | 10 |
| Deposition Topics 16, 20, 21, 37, 39-41 | 11 |
| Deposition Topic 18 | 11 |
| Deposition Topics 22, 29, 38 and 42 | 11 |
| Deposition Topic 4, 12, 23-28, 31, 33, 44-45 | 12 |
| 2. Any trade secret information is necessary and can be protected under the protective order | 12 |
| 3. The requested testimony is proper and timely | 15 |
| B. All Requested Document Discovery Should Be Compelled | 16 |
| IV. CONCLUSION | 17 |

# TABLE OF AUTHORITIES

**Page**

**Cases**

Breon v. Coca-Cola Bottling Co. of New England,
232 F.R.D. 49 (D. Conn. 2005) ........ 7

Computer Access Technology Corp. v. Catalyst Enterprises, Inc.,
273 F.Supp.2d 1063 (N.D. Cal. 2003) ........ 10

Dorel Juvenile Group, Inc. v. Summer Infant, Inc.,
MC 06-91, 2006 U.S. Dist. LEXIS 77906 (Dist. R.I. 2006) ........ 13

Heat & Control, Inc. v. Hester Industries, Inc., 785 F.2d 1017 (Fed. Cir. 1986) ........ 13

Insulate America v. Masco Corp., 227 F.R.D. 427, 432 (W.D.N.C. 2005) ........ 7, 13

ITT Electro-Optical Prods. Div. of ITT Corp. v. Electronic Tech Corp.,
161 F.R.D. 228 (D. Mass. 1995) ........ 12, 13

Lon Tai Shing Co., Ltd v. Koch & Lowy et al.,
90 Civ 4464, 1992 U.S. Dist. LEXIS 673 (S.D.N.Y 1992) ........ 10

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978) ........ 7

Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588 (D. Kan. 2003) ........ 12

Truswal Systems Corp. v. Hydro-Air Engineering, Inc.,
813 F.2d 1207 (Fed. Cir. 1987) ........ 13

United States v. Int'l Bus. Machines Corp., 67 F.R.D. 40 (S.D.N.Y. 1975) ........ 12

**Rules**

Fed. R. Civ. P. 26(b)(1) ........ 7

## I. BACKGROUND

### A. The New York Action

The underlying action pending in the Eastern District of New York is a trademark infringement action brought by Rush Industries, Inc. against Garnier LLC (hereinafter "Garnier") seeking inter alia, a permanent injunction and monetary relief for infringement of Rush's trademarks, "Long 'n Strong" and "Long 'n Strong Extra." Rush has been using the Long 'n Strong trademark on its hair care products for about the past twenty years. The Defendant, Garnier in conjunction with its parent company, non-party L'Oreal USA, Inc. (hereinafter "L'Oreal USA") and the NY Maybelline-Garnier division began marketing, advertising and selling hair care products bearing the mark "Long & Strong" in about early 2005.[1]

In April 2005, Rush sent a cease and desist letter requesting that Garnier cease all infringement. Nonetheless, Garnier continued its infringement and Rush was forced to bring an action against Garnier in October 2005 (the Complaint is attached to CVS' Memorandum of Law (hereinafter CVS' Memo) as Exhibit A. Despite the filing and service of the Complaint, Garnier continued to use its infringing mark Long & Strong through April 2006. In about April 2006 Garnier made a slight change, namely from Long & Strong, to the confusingly similar mark, Length & Strength, which still infringes Rush's Long 'n Strong trademark rights.

Rush is a small Long Island company which enjoyed profitable sales of its Long & Strong hair care product for years prior to Garnier's/L'Oreal USA's infringement. As a result of the infringement by Garnier/L'Oreal USA, Rush has suffered and continues to suffer significant financial losses.

---

[1] Rush has a motion pending to add L'Oreal USA and Laboratorie Garnier & Cie to the pending New York action.

**B. The Status of Discovery in the New York Action**

The discovery scheduling order initially entered into by the parties and so ordered by Magistrate Judge Boyle initially scheduled fact discovery to close on July 14, 2006. In July 2006, Rush's and Garnier's counsel participated in a conference with the Magistrate in which, upon Garnier's counsel's request, the Magistrate issued another Scheduling Order on July 24, 2006 setting all discovery to close on November 30, 2006. Burke Exh. D, the "July 24, 2006 Order." Though Garnier is arguing for an earlier date, the July 24, 2006 Order is clear on its face noting that in order for discovery to be timely, discovery requests must be served sufficiently in advance of the discovery completion date for a response to be served prior to the discovery completion date. See Burke Exh. D. Rush's November 8, 2006 subpoena to CVS provided adequate time for a response by the November 30, 2006 discovery cut off.

**C. CVS' Involvement And The Subpoena To CVS**

Garnier sells its Long & Strong/Length & Strength hair care products through various mass market retailers and drug store chains, including CVS. In addition to selling hair care products of other companies, CVS also markets and sells its own hair care products under the CVS private label. These products include hair care products, which appear to have been copied from Garnier's infringing use of Rush's Long 'n Strong trademarks. Burke Exhibit E shows Garnier's infringing Long & Strong products juxtaposed with CVS' Long & Strong products.

Curiously, right around the time that Garnier switched from the mark Long & Strong to the Length & Strength mark on its hair care products, CVS began selling hair care products under its private label with the mark Long & Strong.

The subpoena to CVS was served on November 8, 2006 seeking deposition testimony on the forty-seven topics set forth in the notice as well as document discovery related to forty-six

requests. Burke Exh. A. The subpoena further included a cover letter in which Rush offered to pay CVS' photocopying expenses incurred in compliance with the subpoena so as to minimize any financial burden on CVS. Burke Affidavit ¶16, Exh. F (hereinafter "Burke Aff."). The return date for the documents was scheduled for Wednesday, November 22, 2006 at the offices of Rush's Rhode Island local counsel, Sammartino & Berg, LLP, located in Providence, RI. The deposition was scheduled for Wednesday, November 29, 2006 at 10:00 a.m.

On November 14, 2006, Christine Egan of CVS first called Rush's New York counsel's offices and left a message seeking an extension of time. Burke Aff. ¶3. Mr. Burke returned her call and left her a message that same day. Id.

When Ms. Egan had not returned Mr. Burke's call by November 16, 2006, Mr. Burke again called Ms. Egan who indicated that she had not yet had time to focus on the subpoena but requested extra time to respond to the subpoena. Burke Aff. ¶4. Mr. Burke informed her that fact discovery was scheduled to end on November 30, 2006 and, therefore, he could not agree to an extension. Id. Both Mr. Burke and Ms. Egan agreed to talk again on Monday, November 20, 2006. Id.

On November 20, 2006 Ms. Egan and Mr. Burke again had a telephone conversation in which Ms. Egan indicated that she had people in CVS' "private label" area looking for documents and that she would ship documents to Mr. Burke by Wednesday November 22, 2006. Burke Aff. ¶5. This clearly gave Rush's counsel the impression that CVS was going to completely comply with the subpoena. Burke Aff. ¶6. Ms. Egan noted that there were many document requests but never requested to discuss the scope of any specific request or indicated any specific objections. Id.

On November 22, 2006 Ms. Megan J. Muoio of Allyn & Fortuna, LLP, a New York law firm, faxed a letter to Mr. Burke at about 1:30 p.m. indicating that the firm represented CVS and provided a written objection to the subpoena attached to CVS' Memo as Exhibit C. Burke Aff. ¶7. Ms. Muoio subsequently called Mr. Burke at about 2:00 p.m. that day to discuss the subpoena. Burke Aff. ¶8. Mr. Burke was busy responding to a motion on another matter but offered to discuss the CVS subpoena at 4:00 p.m. that afternoon. Burke Aff. ¶8, Exh. B. However, Ms. Muoio did not want to schedule a telephone discussion for later that afternoon and indicated that any document production would be unduly burdensome and that she would proceed with filing a motion to quash the subpoena. Burke Aff. ¶8. Mr. Burke further informed Ms. Muoio that Ms. Egan of CVS' General Counsel's office never indicated a desire to discuss any specific document requests or deposition topics. Id. Mr. Burke memorialized this telephone conversation with Ms. Muoio in a letter and requested that she propose convenient dates and times to discuss the scope of the document requests and deposition topics. Burke Aff. ¶9, Exh. B. Specifically, Mr. Burke indicated that Rush was "willing to have a meaningful conversation about any or all document requests and depositions topics at a mutually convenient time." Burke Exh. B.

Ms. Muoio subsequently sent two additional letters, one being the second letter attached to CVS' Memorandum as Exhibit C objecting to certain document requests as seeking trade secret information, and the other at about 5:56 p.m. on November 22, 2006 alleging that Mr. Burke was unwilling to discuss any realistic resolution of the issues whereby she clearly disregarded the fact that Rush was first informed of CVS' intention to file a motion to quash on the day that the document discovery was due. Burke Aff. ¶10, Exh. C. This exchange of

correspondence confirms that it was CVS' counsel who was unwilling to discuss the subpoena topics.

### D. CVS' Present Motion to Quash

On November 27, 2006 Mr. Paul Dwyer of Edwards, Angell, Palmer and Dodge, LLP, called Mr. Burke and indicated that a motion to quash the deposition had been filed with the Rhode Island district court on behalf of CVS. Burke Aff. ¶11. The parties agreed to put off the deposition until the motion was resolved thereby rendering moot CVS' request for an emergency hearing. Id.

Mr. Dwyer further indicated that since CVS had sufficiently objected to the document requests attached to the subpoena by letters faxed to Rush's counsel on November 22, 2006, CVS had fulfilled its obligations and it was up to Rush to make a motion to compel. Burke Aff. ¶12.

## II. SUMMARY OF THE ARGUMENT

CVS' motion to quash should be denied on the grounds that the information requested in the subpoena is relevant to the claims and defenses of the New York pending action, necessary and not unduly burdensome to CVS. Moreover, CVS has failed to meet its burden of proof with respect to the alleged trade secret nature of certain information. Nonetheless, Rush has established, by the arguments set forth below that such information is discoverable because it is relevant and necessary.

For similar reasoning, Rush's motion to compel the production of documents should be granted. CVS' production of documents will not be burdensome and, in fact, in an effort to minimize expense to CVS, Rush has offered to pay for CVS' actual photocopying expenses.

## III. ARGUMENT

### A. The Required Discovery is Relevant to Rush's Pending Trademark Infringement Action Against Garnier and Should Be Allowed

Initially, it should be noted that the 47 deposition topics set forth in the notice parallel the 46 document requests in Schedule B. Burke Exh. A. The 47th deposition topic, is propounded simply so that CVS produce a witness who can authenticate and attest to the accuracy of the documents produced in response to the subpoena duces tecum.

The scope of discovery permitted under the Federal Rules of Civil Procedures is broad and allows parties to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . ." Fed. R. Civ. P. 26(b)(1). Discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978). Relevance, in the realm of discovery, ought to be broadly and liberally construed. Breon v. Coca-Cola Bottling Co. of new England, 232 F.R.D. 49, 52 (D. Conn. 2005).

In making a motion to quash, the burden is on the movant to establish that the subpoena should be quashed. A party resisting discovery must show specifically how the information requested is not relevant or how each question is overly broad, burdensome or oppressive. 'Inasmuch as courts reviewing ancillary discovery matters are frequently not familiar with the main action, they should be permissive where there is doubt whether the requested discovery of admissible evidence. Insulate America v. Masco Corp., 227 F.R.D. 427, 432 (W.D.N.C. 2005).

CVS has taken the unreasonable position that it would be required to produce employees in several of its divisions to comply with the subpoena; however, it ignores the possibility that it can prepare one knowledgeable person on all of the topics in view of the fact that the topics are, for the most part, limited to the Long & Strong product line.

CVS' counsel argued that "CVS has no knowledge as to Rush's products or alleged trademarks, nor does CVS have knowledge as to Garnier LLC's alleged use or misappropriation of those trademarks." CVS Memo Exh. C. If there have not been any communications between CVS or any person acting on its behalf and Garnier or any person acting on its behalf regarding the Long & Strong trademark, then the responses to deposition topics 7-9, 18-21, 35, 39-43 and 46 would be very brief and surely not unduly burdensome.

Moreover, CVS' position that Mr. Burke refused to reduce the scope of the subpoena topics is plainly false in that the letters exchanged by the parties prior to the filing of CVS' motion to quash demonstrate that it was CVS, not Rush's counsel, that did not want to discuss the scope of the topics. Burke Aff. ¶¶7-12. CVS' request for sanctions is clearly unreasonable in view of its refusal to discuss the subpoena at a "mutually convenient" time and CVS' blanket refusal to produce **any** relevant documents.

**1. The subpoena deposition topics are directed to relevant and necessary information and are not unduly burdensome**

Initially, it should be noted that the majority of the deposition topics set forth in the subpoena to CVS are all limited to the mark Long & Strong. The following paragraphs set forth Rush's position on each of the deposition topics.

**Deposition Topics 1, 2, 10, 11, 17, 30 and 32-34**

Topics 1, 2, 10, 11, 17, 30 and 32-34 are highly relevant to this action and essential to prove or disprove Rush's reasonable position from the available facts that collusion may exist between CVS and Garnier relating to the use of the mark Long & Strong. Garnier has taken the position that it is not aware of any other entity using the mark Long & Strong. However, this strange credulity in view of the fact that Garnier sells its products in CVS stores, and that CVS sells its Long & Strong hair care products along side Garnier Long & Strong and/or Length &

Strength products. The publicly available facts strongly suggest that CVS has colluded with Garnier to harm Rush's trademark rights. See Burke Exh. E strongly suggests that CVS has copied Garnier's trade dress.

Alternatively, Garnier will argue that Rush's loss of sales was due to other competition not Garnier's infringing activities; therefore, Rush needs this requested information to counter one of Garnier's defenses.

**Deposition Topic 3**

Topic 3 is relevant and necessary to disclose whether CVS usually conducts trademark searches prior to adopting a mark and whether it conducted a trademark search for the mark Long & Strong. This information is relevant because if a search was conducted, Garnier's trademark application for the mark Long & Strong would have been uncovered and would therefore lead to questioning and answers as to whether CVS and Garnier had communications relating use of the mark Long & Strong. This includes whether CVS believed that Garnier owned the rights to the mark Long & Strong and whether Garnier imposed such belief onto CVS. Moreover, this request is likely to lead to evidence of any possible collusion between Garnier and CVS that Garnier has attempted to conceal thus far.

Alternatively, if CVS typically conducts trademark searches and did not do so prior to its use of the Long & Strong trademark, such a deviation from CVS' normal practical would also suggest some collusion.

**Deposition Topics 5, 36**

Topics 5 and 36 are related and are clearly relevant to this action in order to confirm whether CVS' use and Garnier's use of the mark Long & Strong overlapped or whether CVS began such use after Garnier had switched to Length & Strength. Such information is necessary

for Rush to determine whether Garnier consented to CVS' use or whether Garnier conveyed any form of agreement to such use. It would also disclose any evidence of collusion.

**Deposition Topic 6**

Topic 6 is relevant and necessary in that Rush has a reasonable right to ask background questions to a witness so as to determine whether the witness is knowledgeable and properly capable of responding to the questions being asked. Without such discovery, Rush would not be able to determine the witness' qualifications.

**Deposition Topics 7-9, 19, 35, 43 and 46**

Topics 7 - 9 are relevant to determine whether CVS had the belief or understanding that Garnier and/or L'Oreal USA or any related company had trademark rights to the mark Long & Strong and where those beliefs or understandings stemmed from. Similarly, Topics 19, 35, 43 and 46 are relevant to determine whether Garnier and CVS, or CVS and any other entity discussed this lawsuit or Rush and/or Rush's trademarks and to disclose evidence of collusion.

**Deposition Topics 13-15**

Topics 13-15 relating to the unit sales, net profits and gross profits made by CVS in connection with its Long & Strong hair care products are highly relevant and necessary to Rush is proving damages. In proving damages for Rush's lost profits Rush must show a connection between Garnier's trademark infringement and Rush's lost sales. Computer Access Technology Corp. v. Catalyst Enterprises, Inc., 273 F.Supp.2d 1063, 1065 (N.D. Cal. 2003); see also Lon Tai Shing Co., Ltd v. Koch+Lowy et al., 90 Civ 4464, 1992 U.S. Dist. LEXIS 673, *9-10 (S.D.N.Y 1992).

Rush needs this information to defend what will be Garnier's likely position that Rush's lost sales may not only be attributable to Garnier but may also have resulted from CVS'

infringing use of Long & Strong or general increased competition by other hair care products marketed and sold by others on the market.

**Deposition Topics 16, 20, 21, 37, 39-41**

Topics 16, 20, 21, 37 and 39-41 are relevant to the pending NY action and further instances of actual confusion relating to Rush's Long 'n Strong trademark. To the extent that no such documents or information exists, then CVS' responses will surely not be unduly burdensome.

**Deposition Topic 18**

Topic 18 is relevant in that Rush has an obvious and legitimate interest in knowing what discussions took place between CVS and Garnier and/or L'Oreal USA and/or what documents were exchanged between these parties relating to either Garnier's Long & Strong/Length & Strength products and/or CVS' Long & Strong hair care products. The production of such information whether by oral testimony and/or document discovery is not burdensome. It actually seems incredible that CVS would sell a product so similar to Garnier's and then create a product bearing the exact mark, i.e. Long & Strong, that Garnier/L'Oreal USA switched from and there would be no discussion or any documents exchanged between these companies. Precluding this discovery would be highly prejudicial to Rush and would, in effect, allow Garnier to benefit from what clearly appears to be a collusion between Garnier/L'Oreal USA and CVS to Rush's detriment.

**Deposition Topics 22, 29, 38 and 42**

Topics 22, 29, 38 and 42 are also clearly relevant to determine whether there was any communication between Garnier/ L'Oreal USA and CVS relating to the mark Long & Strong.

Such discovery would allow Rush to determine Garnier's mindset of its rights or Rush's rights to the mark Long & Strong.

**Deposition Topic 4, 12, 23-28, 31, 33, 44-45**

The relevancy of information responsive to Topics 4, 12, 23-28, 31, 33 and 44-45 is similar to that of Topics 13-15. Rush needs this information of the hair care product market to rebut defenses by Garnier that Rush's loss of sales on its Long 'n Strong hair care products was not a result of Garnier's use of the mark Long & Strong and Length & Strength, but rather due to other outside forces.

**2. Any trade secret information is necessary and can be protected under the protective order**

The party moving to quash a subpoena has the burden to establish that the information sought is trade secret or confidential and that its disclosure will result in a clearly defined and serious injury to the moving party. Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588, 592 (D. Kan. 2003). See also, ITT Electro-Optical Prods. Div. of ITT Corp. v. Electronic Tech Corp., 161 F.R.D. 228, 231 (D. Mass. 1995). The factors to be considered in determining whether information is at trade secret include (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the company to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the company in developing the information; and (6) the ease or difficulty with which information could be properly acquired or duplicated by others. United States v. Int'l Bus. Machines Corp., 67 F.R.D. 40, 46-47 (S.D.N.Y. 1975).

"Where a subpoena requires disclosure of a trade secret or other confidential or commercially sensitive information it should be quashed unless the party serving the subpoena

shows a substantial need and the court can devise an appropriate accommodation to protect the interests of the party opposing such potential harmful disclosure." Dorel Juvenile Group, Inc. v. Summer Infant, Inc., MC 06-91, 2006 U.S. Dist. LEXIS 77906, *6 (Dist. R.I. 2006) (citing to Insulate America v. Masco Corp., 227 F.R.D. 427, 432 (W.D.N.C. 2005).

The mere fact that relevant information is allegedly a trade secret does not immunize it from discovery. The protective order that is in place in the pending Eastern District of New York case can be extended to this present action so as to protect any confidential material and has already been provided to CVS' counsel, Mr. Dwyer. Nonetheless the disclosure of CVS' alleged trade secret information is both relevant and necessary to Rush's case. Heat & Control, Inc. v. Hester Industries, Inc., 785 F.2d 1017, 1025 (Fed. Cir. 1986).

CVS has taken the position that Topics 2, 4, 6-8, 10, 12, 16, 19, 22-25, 28-34, 38, and 42-45 are trade secret information. Initially, CVS has failed to establish that such information includes trade secrets. CVS' papers have intentionally ignored CVS' burden of establishing that the requested information constitutes trade secret information. For example, CVS has not established the steps that it has maintained to protect the trade secret status of this information, including the six factors considered in determining whether information is trade secret. Rather, CVS requests the court to take judicial notice of the information's trade secret status. However, the reluctance to disclose trade secret information, including sales information is in itself an insufficient basis on which to deny discovery of that information under appropriate protection. Truswal Systems Corp. v. Hydro-Air Engineering, Inc., 813 F.2d 1207, 1211 (Fed. Cir. 1987).

Surely, Topics 7 and 8, specifically CVS' knowledge of Rush's use of the marks Long 'n Strong and Long 'n Strong Extra, and CVS' knowledge of Garnier's and/or L'Oreal USA's use of the marks Long & Strong and/or Length & Strength does not constitute trade secret

information. Similarly, Topic 19, "CVS' knowledge and/or first awareness of Rush and/or Plaintiff's marks cannot be considered trade secret information. Any concern by CVS of the disclosure of confidential information can readily be protected by disclosure under the protective order.

Although CVS may argue that Topic 10 includes trade secret information, such information is relevant and necessary for Rush to proceed with its claims against Garnier. Garnier has completely ignored and disrespected Rush's rights to the marks Long 'n Strong and/or Long 'n Strong Extra since Rush first sent its cease and desist letter to Garnier in April 2005. Allowing discovery on CVS' creation, adoption, selection, and/or decision to use the trademark Long & Strong is necessary to determine what, if any, involvement Garnier had in CVS' use of the mark Long & Strong on its hair care products and would certainly uncover any collusion that may exist between this two multimillion dollar companies.

This same argument applies to information responsive to Topics 22 and Topics 29, "actual or proposed licenses, written or oral agreements, understandings, assignments or consents relating to use of the mark Long & Strong or another mark using the mark components "long" and "strong""; and "consideration paid and/or received by or on behalf of CVS for use of the Long & Strong trademark", respectively. CVS claims that information responsive to this request is trade secret, however, CVS has not identified any specific harm that would result with disclosure. These deposition topics are limited to use of the mark Long & Strong and moreover, is highly relevant and necessary for Rush to uncover whether Garnier has colluded with others to infringe Rush's trademark rights.

Rush has set forth the relevancy and necessity of information and documents related to each of the deposition topics in section 1 above. Any concern as to the protection of these

documents can be allayed by production under the stipulated Protective Order that has been entered in this case. Therefore, the alleged trade secret status of certain information and documents should not preclude disclosure.

**3. The requested testimony is proper and timely**

CVS has taken the position that Rush has improperly propounded this subpoena in order to collect information in preparation of filing an action against CVS. The mere fact that CVS might be infringing Rush's trademark rights does not shield it from discovery and preclude the production of relevant information and documents. Rush has no present intention to add CVS to its suit against Garnier or to bring a separate action against CVS. If Rush wished to bring a suit against CVS, which it does not, it certainly could do so at any time without the need for further information. Rather, the subpoena Rush served on CVS has no improper purpose and has only been propounded to obtain relevant and necessary information for Rush to advance its claims against Garnier. While CVS argues that it does not sell Rush's goods, it clearly ignores the plain fact that it sells Garnier's products in its national retail stores and also sells its own CVS private label Long & Strong hair care products which are virtually identical in appearance to Garnier's Long & Strong hair care products. Burke Exh. E.

Furthermore, CVS' position that the subpoena served on November 8, 2006 is untimely is clearly misplaced. As noted above, the July 24, 2006 Order is clear on its face in noting that in order for discovery to be timely, discovery requests must be served sufficiently in advance of the discovery completion date for a response to be served prior to the discovery completion date. Burke Exh. D. Rush's November 8, 2006 subpoena to CVS provided adequate time for a response by the November 30, 2006 discovery cut off. Therefore, the subpoena should not be quashed as being untimely.

**B. All Requested Document Discovery Should Be Compelled**

The document requests in Rush's subpoena are virtually identical to the deposition topics discussed above. The numbers identifying each document request correspond to the same numbered deposition topic. Therefore, the arguments regarding relevance and necessity set forth above with respect to the deposition topics apply equally to Rush's document requests.

In order to avoid burdening the Court with repetitious arguments, Rush has combined its opposition to CVS' motion to quash the deposition subpoena and its memorandum in support of its motion to compel the production of documents set forth in Schedule B attached to the subpoena served on CVS on November 8, 2006.

This motion to compel is properly brought in view of CVS' written objections to the document requests attached to the subpoena served on November 8, 2006. CVS has objected to the document requests on the grounds that the requests are improper, overbroad and unduly burdensome and contain trade secret information.

While Rush's counsel has attempted to discuss the document requests with CVS' counsel, CVS has been clear it its refusal to discuss the scope of any of the document requests. See Burke Exhs. B and C. As such, Rush has met its requirements under Rule 37 in attempting to confer with CVS to resolve the dispute. Rush, in a cover letter served with the subpoena offered to pay CVS' photocopying expenses associated with complying with subpoena. This offer was intended to minimize and expenses that would be imposed on CVS. Nonetheless, CVS still argues burden and expense while failing to disclose this offer of reimbursement to the Court.

## IV. CONCLUSION

For the foregoing reasons, Rush respectfully requests that the court deny CVS' motion to quash the subpoena and grant Rush's motion to compel documents from CVS.

Date: December 11, 2006

Respectfully submitted,

DANIEL P. BURKE & ASSOCIATES, PLLC

By: /s/ Georgia Damoulakis

Daniel P. Burke (pro hac vice)
Georgia Damoulakis (pro hac vice)
300 Rabro Drive – Suite 131
Hauppauge, NY 11788
631-851-9766
631-851-9755 fax

SAMMARTINO & BERG, LLP

By: /s/ Andrew H. Berg

Andrew H. Berg (#4754)
128 Dorrance Street, Suite 400
Providence, RI 02903
401-274-0113
401-274-0175 fax

F:\DB\536\20\MOTIONS\CVS\Memorandum.doc

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing:

- Rush Industries' Motion To Compel The Production Of Documents

- Memorandum of Law In Opposition To CVS Pharmacy Inc.'s Motion To Quash The Subpoena Pursuant To Fed. R. Civ. P. 45(c) Or For A Protective Order Pursuant To Fed. R. Civ. P. 26(c) And In Support of Rush Industries' Motion To Compel The Production Of Documents

- Affidavit of Daniel P. Burke with Exhibits A through F

have this 11th day of December, 2006 been filed electronically and are available for viewing and downloading from the ECF system. Notice will be electronically mailed to:

Paul E. Dwyer, Jr., Esq.
Edwards, Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903
pdwyer@eapdlaw.com

I further certify that a copy of the above listed documents have this 11th day of December, 2006 been sent via first class mail and e-mail to:

Robert Sherman, Esq.
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, New York 10022
robertsherman@paulhastings.com

/s/ Andrew H. Berg