UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| In re: Subpoenas Issued to CVS Pharmacy, Inc., In the Matter of RUSH INDUSTRIES, INC., Plaintiff, -v- GARNIER LLC, AND JOHN DOES 1-5, Defendants. | CIVIL ACTION NO.: 06-107ML [pending EDNY 05-4910] |

AFFIDAVIT OF DANIEL P. BURKE

I , DANIEL P. BURKE, declare:

1. I am an attorney licensed to practice in the State of New York and am admitted pro hac vice to practice before this court. I am the sole member of Daniel P. Burke & Associates, PLLC, and counsel for Plaintiff, Rush Industries, Inc. ("Rush"). I am personally knowledgeable of the facts contained herein and could competently testify thereto if called upon to do so.

2. Attached hereto as Exhibit A is a true and correct copy of the subpoena to CVS served on November 8, 2006 that included Schedule A which is the Notice of deposition setting forth 47 deposition topics and Schedule B which sets forth 46 document requests.

3. On November 14, 2006, Christine Egan of CVS first called my office and left a message seeking an extension of time to respond to the CVS subpoena served on

November 8, 2006. I returned her call and left her a message for her to call me back that same day.

4. When Ms. Egan had not returned my call by November 16, 2006, I again called Ms. Egan who indicated that she had not yet had time to focus on the subpoena to CVS but she requested extra time to respond to the subpoena. I informed her that fact discovery was scheduled to end on November 30, 2006 and, therefore, I asked her to consider the subpoena and to see what documents CVS could produce within the requested date. We agreed to talk again on Monday, November 20, 2006.

5. On November 20, 2006, I again spoke with Ms Egan and she indicated that she had people in CVS' "private label" area looking for documents and that she would ship documents to me by Wednesday, November 22, 2006.

6. During our telephone conversations, Ms. Egan noted that there were many document requests but never requested to discuss the scope of any specific request or indicated any specific objections. As a result, I was under the impression that CVS was going to completely comply with the subpoena.

7. On November 22, 2006, at about 1:30 p.m., my office received a faxed letter from Megan J. Muoio, Esq, from the New York City law firm of Allyn & Fortuna, LLP, 200 Madison Avenue, 5th Floor, NY, NY 10016, which indicated that her firm represented CVS and provided a written objection to the CVS subpoena.

8. Ms. Muoio subsequently called me at about 2:00 p.m. that day to discuss the subpoena. I told her that I had not yet reviewed her letter as I was busy responding to a motion on another matter. I offered to discuss the CVS subpoena at 4:00 p.m. that afternoon. Ms. Muoio did not want to schedule a telephone discussion for later that afternoon and indicated that any document production would be unduly burdensome

and that she would proceed with filing a motion to quash the subpoena. I also told Ms. Muoio that Ms Egan never indicated a desire to discuss any specific document requests or deposition topics.

9. I then memorialized the November 22, 2006 conversation with Ms. Muoio in a letter and requested that she propose convenient dates and times to discuss the scope of the document requests and deposition topics. I indicated to her that Rush was "willing to have a meaningful conversation about any or all document requests and deposition topics at a mutually convenient time." Attached hereto as Exhibit B is a true and correct copy of my November 22, 2006 letter to Ms. Muoio.

10. Ms. Muoio subsequently sent two additional letters on that same day, November 22, 2006. One was received at about 5:33 p.m. and objected to certain document requests as seeking trade secret information. The next letter was received at about 5:56 p.m. alleging that I was unwilling to discuss any realistic resolution of the issues. In this letter, Ms. Muoio clearly disregarded the fact that I was first informed of CVS' intention to file a motion to quash on the day that the document discovery was due. Attached hereto as Exhibit C is a true and correct copy of the November 22, 2006 letter sent by Ms. Muoio at 5:56 p.m.

11. On November 27, 2006, Paul Dwyer called me and indicated that a motion to quash the deposition had been filed with the Rhode Island district court on behalf of CVS. At that time, we agreed to put off the deposition until the motion was resolved.

12. Mr. Dwyer also indicated that CVS had sufficiently objected to the document requests attached to the CVS subpoena and it was up to Rush to make a motion to compel production of the documents.

13. Attached hereto as Exhibit D is a true and correct copy of the July 24, 2006 Scheduling Order setting discovery to be completed by November 30, 2006. This Order is clear on its face, noting that in order for discovery to be timely, discovery requests must be served sufficiently in advance of the discovery completion date for a response to be served prior to the discovery completion date.

14. Rush's November 8, 2006 subpoena to CVS provided adequate time for a response by the November 30, 2006 discovery cut off.

15. Attached hereto as Exhibit E are true and correct copies of photographs of Garnier's infringing Long & Strong products juxtaposed with CVS' Long & Strong products.

16. Attached hereto as Exhibit F is a true and correct copy of the November 7, 2006 cover letter attached to the subpoena served on CVS on November 8, 2006. In this letter, Rush offered to pay CVS' actual photocopying expenses incurred in compliance with the subpoena so as to minimize any financial burden on CVS.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: December 11, 2006

Daniel P. Burke