# EXHIBIT "A"

AO88 (Rev. 1/94) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

RUSH INDUSTRIES, INC.

V.

GARNIER LLC & JOHN DOES 1-5

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]
U.S.District Court, Eastern District of New York
CV-05-4910

TO: CVS PHARMACY, INC.
1 CVS Drive
Woonsocket, Rhode Island 02895
Attn: Legal Department

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| SAMMARTINO & BERG, LLP<br>128 Dorrance Street, Suite 400, Providence, Rhode Island 02901 | 11/29/2006 10:00 am |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SCHEDULE B

| PLACE | DATE AND TIME |
|---|---|
| SAMMARTINO & BERG, LLP<br>128 Dorrance Street, Suite 400, Providence Rhode Island 02901 | 11/22/2006 10:00 am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature] ATTORNEY FOR PLAINTIFF | 11/7/06 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
DANIEL P. BURKE & ASSOCIATES, PLLC
300 Rabro Drive, Suite 131, Hauppauge, New York 11788 Tel: 631-851-9766

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

X Amanda Clarke

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | | |
|---|---|---|
| | DATE | PLACE |
| SERVED | 11-9-06 | WOONSOCKET RI |

SERVED ON (PRINT NAME): CVS PHARMACY - LEGAL DEPT

MANNER OF SERVICE:

SERVED BY (PRINT NAME): FRANK N CATTAMERO

TITLE: FEDERAL PROCESS SERVER

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 11-9-06
DATE

[signature]
SIGNATURE OF SERVER

1409 ATWOOD AVE
ADDRESS OF SERVER

JOHNSTON RI

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

DANIEL P. BURKE (DB 1416)
GEORGIA DAMOULAKIS (GD 7237)
DANIEL P. BURKE & ASSOCIATES, PLLC
300 RABRO DRIVE, SUITE 131
HAUPPAUGE, NEW YORK 11788
TEL: 631-851-9766
FAX: 631-851-9755

**"SCHEDULE A"**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

RUSH INDUSTRIES, INC.

Plaintiff,

v.

GARNIER LLC & JOHN DOES 1-5

Defendants.

**Eastern District of New York**
**CIVIL ACTION NO.:05-4910 (LDW)(ETB)**

**RUSH INDUSTRIES INC.'s NOTICE OF DEPOSITION OF NON-PARTY CVS PHARMACY, INC. PURSUANT TO FED. R. CIV. P. 45 AND 30(b)(6)**

DATE: November 29, 2006
TIME: 10:00 a.m.
PLACE: SAMMARTINO & BERG, LLP
128 Dorrance Street
Suite 400
Providence, RI 02903

TO: CVS PHARMACY, INC., all parties, and their attorneys of record:

PLEASE TAKE NOTICE that pursuant to Rules 45 and 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff, Rush Industries, Inc. (hereinafter "RUSH") shall take the oral deposition of CVS PHARMACY, INC. (hereinafter "CVS") by its officers, directors, and/or managing agents, or others persons who consent to testify on its behalf, having the

most knowledge of the topics set forth below. The following definitions apply to the deposition topics set forth in Schedule A and the document requests in Schedule B.

**DEFINITIONS:**

A. The term "CVS" means CVS Pharmacy, Inc., along with its divisions and any parent; subsidiaries; affiliates; licensees, franchisees, successors, predecessors in interest; assignors, assignees; subrogees; present and former officers, directors, employees, and agents; or other related business entity, and any other person acting or purporting to act for or on behalf of the foregoing.

B. The term "L'ORÉAL USA" means L'Oréal USA, Inc., along with its divisions and any parent; subsidiaries; affiliates; licensees, franchisees, successors, predecessors in interest; assignors, assignees; subrogees; present and former officers, directors, employees, and agents; or other related business entity; and any other person acting or purporting to act for or on behalf of the foregoing.

C. The term "L'ORÉAL S.A." which means L'ORÉAL S.A., along with its divisions and any parent; subsidiaries; affiliates; licensees, franchisees, successors, predecessors in interest; assignors, assignees; subrogees; present and former officers, directors, employees, and agents; or other related business entity; and any other person acting or purporting to act for or on behalf of the foregoing.

D. "YOU" or "YOUR", refers to CVS Pharmacy, Inc.

E. "GARNIER LLC" means Garnier LLC, along with its divisions and any parent including but not limited to L'Oréal USA, Inc.; subsidiary; affiliate; licensee, franchisee, successor, predecessor in interest, assignor, assignee; subrogee; present and former officers, directors, employees, and agents; or other related business entity; and any other person acting or purporting to act for or on behalf of the foregoing.

F. "LABORATOIRE GARNIER & CIE" means Laboratoire Garnier & Cie along with its divisions and any parent; subsidiaries; affiliates; licensees, franchisees, successors, predecessors in interest; assignors, assignees; subrogees; present and former officers, directors, employees, and agents; or other related business entity, and any other person acting or purporting to act for or on behalf of the foregoing.

G. "RUSH" means Rush Industries, Inc., along with its divisions and any parent; subsidiary; affiliate; licensee, franchisee, successor, predecessor in interest; assignor; assignee, subrogee; present and former officers, directors, employees, and agents or other related business entity; and any other person acting or purporting to act for or on behalf of the foregoing.

H. "ALL" or "ANY" means each and every.

I. "RELATING TO" shall be read inclusively to include and/or mean involving, reflecting, defining, identifying, stating, referring to, constituting, evidencing or in any way being relevant, logically or factually, directly or indirectly, to a given subject.

J. "DOCUMENT" is used in its broadest sense and shall include, without limitation, all writings and recordings and photographs as defined in Rules 1001(1) and 1001(2) of the Federal Rules of Evidence specifically including (i) all originals, copies and drafts of originals, and (ii) all originals, copies, or drafts of originals on which appear any notes or writings placed thereon after the document was first prepared or produced. Pursuant to Rule 1001(3), where the information requested is data stored in a computer or similar device, an "original" is a printout or other output readable by sight, shown to accurately reflect the data. The term "DOCUMENT" includes every kind of written, printed, typed, recorded, or graphic matter, however produced or reproduced, including, without limitation, any letters, e-mails, telegrams, correspondence, memoranda, reports, opinions, agreements, manuscript notes, publications, notebooks, diaries and similar writings, minutes of meetings, records of telephone conferences and conversations, circulars, monographs, bulletins, manuals, brochures, pamphlets, specifications, data sheets, speeches, photographs and other graphic reproductions, drawings, sketches, blueprints, schematic drawings, detailed drawings, video recordings, audio recordings, computer printouts, computer tapes, magnetic discs and any other writings of any nature whatsoever.

K. The term "COMMUNICATION" is used in its broad sense and includes, but is not limited to, any oral or written transmittal of information or request for information made from one person to another, whether made in person, by telephone or by any

other means, or a document made for the purpose of recording a communication, idea, statement, opinion or belief.

L. Whenever the terms "AND" or "OR" are used they are to be construed both disjunctively and conjunctively as necessary to bring within the scope of these discovery requests that might otherwise be construed to be outside the scope.

M. The use of the singular form of any word includes the plural and vice versa references to the masculine gender shall apply equally to the feminine gender.

N. The term "DEFENDANT'S MARKS" means "LONG & STRONG" and/or "LENGTH & STRENGTH".

O. The term "PLAINTIFF'S MARKS" means "LONG 'N STRONG" and/or "LONG 'N STRONG EXTRA".

**TOPICS:**

1. CVS' LONG & STRONG hair care products.

2. The design AND development of ALL promotional materials AND packaging RELATING TO CVS' LONG & STRONG hair care products.

3. ALL trademark searches RELATING TO LONG & STRONG OR ANY marks that include the words "long", "strong" OR ANY words phonetically similar thereto.

4. The amount of money spent by CVS for advertising AND promotion of goods offered in connection with the mark LONG & STRONG in the US on a monthly basis for each month since the date of first use, including but not limited to ANY summary reports.

5. When CVS began selling its LONG & STRONG hair care products.

6. CVS' knowledge of the hair care product market.

7. CVS' knowledge of RUSH's use of the marks LONG 'N STRONG and LONG 'N STRONG EXTRA.

8. CVS' knowledge of GARNIER's AND/OR L'ORÉAL USA's use of the marks LONG & STRONG AND/OR LENGTH & STRENGTH.

9. CVS' knowledge of LABORATOIRE GARNIER & CIE's rights in the marks LONG & STRONG AND/OR LENGTH & STRENGTH.

10. CVS' creation, adoption, selection, AND/OR decision to use the trademark LONG & STRONG.

11. ALL products sold bearing the mark LONG & STRONG.

12. The identity of purchasers of products sold by CVS in connection with the mark LONG & STRONG.

13. Unit sales by month AND by product of CVS' products sold in connection with the mark LONG & STRONG.

14. Net profits by product made by CVS from products sold in connection with the mark LONG & STRONG.

15. Gross profits by product made by CVS from products sold in connection with the mark LONG & STRONG.

16. COMMUNICATIONS, including but not limited to complaints received by CVS, regarding products bearing the marks LONG & STRONG.

17. The identity of persons involved in CVS' decision to use the mark LONG & STRONG.

18. COMMUNICATIONS between CVS, GARNIER, LLC, L'ORÉAL USA, L'ORÉAL SA, LABORATOIRE GARNIER & CIE, AND/OR any other entity RELATING TO the marks LONG & STRONG AND/OR LENGTH & STRENGTH.

19. CVS' knowledge AND/OR first awareness of RUSH AND/OR PLAINTIFF'S MARKS.

20. ANY AND ALL instances AND/OR evidence of actual confusion between CVS AND RUSH communicated to CVS.

21. A likelihood of confusion AND/OR a lack of likelihood of confusion between CVS and RUSH communicated to CVS.

22. Actual or proposed licenses, written or oral agreements, understandings, assignments or consents RELATING TO use of the mark LONG & STRONG or another mark using the mark components "LONG" and "STRONG".

23. Reports requested AND/OR received by OR on behalf of CVS, AND/OR information from ACNielson OR ANY other entity that monitors the hair care product market, RELATING TO hair care products first introduced to the U.S. market from January 1, 2000 to the present.

24. CVS' introduction of new hair care products in the U.S. hair care market from January 1, 2000 to the present.

25. The introduction of new hair care products in the U.S. hair care market from January 1, 2000 to the present.

26. ALL entities who first entered the U.S. hair care product market from January 1, 2000 to the present.

27. ALL hair care products which were first introduced in the U.S. hair care market from January 1, 2000 to the present.

28. Advertising AND promotion expenditures incurred in relation to ANY AND ALL hair care products first introduced in the U.S. hair care market from January 1, 2000 to the present.

29. Consideration paid AND/OR received by OR on behalf of CVS for use of the LONG & STRONG trademark.

30. ALL actual OR proposed advertisements, press releases, brochures, price lists, catalogs, newspaper, magazine AND trade articles, Internet advertisements, AND websites AND other promotional materials containing OR bearing the mark LONG & STRONG OR used to promote goods bearing OR offered under the mark LONG & STRONG.

31. CVS' expenditures for ALL advertisements AND promotions which included products bearing the mark LONG & STRONG AND ANY summaries thereof.

32. Every product, label, wrapper, package, hang tag, sticker, OR box that has been used OR is proposed to be used in connection with ANY goods bearing the mark LONG & STRONG.

33. CVS' advertising AND marketing campaigns in the U.S. RELATING TO the mark LONG & STRONG including ad AND product placement AND associated costs.

34. The use OR proposed use of LONG & STRONG OR ANY variant thereof by ANY person other than CVS in the U.S.

35. Plaintiff, PLAINTIFF'S MARKS, OR goods sold by Plaintiff under PLAINTIFF'S MARKS.

36. The date and manner of first use of LONG & STRONG in the U.S. by CVS.

37. ALL complaints, objections, oppositions, cancellations, administrative proceedings, civil actions or demand letters, RELATING TO the mark LONG & STRONG AND ALL DOCUMENTS RELATING TO ANY such matters.

38. ALL decisions OR settlement agreements regarding ANY actual OR potential dispute, conflict, litigation OR administrative proceeding involving the mark LONG & STRONG.

39. Mail, deliveries, telephone calls, bills, payments, invoices, memoranda, letters OR ANY other materials, inquiring about, intended for OR referring to Plaintiff, to either of PLAINTIFF'S MARKS OR to Plaintiff's hair care products.

40. Mail, deliveries, telephone calls, bills, payments, invoices, memoranda, letters OR ANY other materials, inquiring about, intended for OR referring to L'OREAL USA AND/OR GARNIER LLC, to the marks LONG & STRONG AND/OR LENGTH & STRENGTH OR to L'OREAL USA's AND/OR GARNIER LLC's hair care products sold in connection with the marks LONG & STRONG AND/OR LENGTH & STRENGTH.

41. Actual confusion, the likelihood of confusion OR the lack of likelihood of confusion, deception OR mistake by any person between the mark LONG & STRONG and Plaintiff's Marks OR as to the source, sponsorship, affiliation OR approval of CVS' AND/OR Plaintiff's goods AND/OR CVS' awareness thereof.

42. CVS' knowledge of third party users of the mark LONG & STRONG OR other marks containing the terms "LONG" AND "STRONG" in the U.S.

43. ANY search AND/OR investigations which CVS has conducted OR has caused to be conducted of Plaintiff OR of PLAINTIFF'S MARKS.

44. ALL events at which CVS has promoted the mark LONG & STRONG AND the costs associated therewith.

45. The specific advertising placement, (e.g., Time magazine, CBS network TV, New York Times, Smart source magazine), circulation, AND date, on which ALL such advertising AND promotional material has appeared RELATING TO goods sold in connection with the mark LONG & STRONG in the U.S. AND the costs associated therewith.

46. This lawsuit (CV 05-4910, pending in the Eastern District of New York).

47. The information, including topics discussed, persons mentioned, author and all recipients of all documents, including the creation of such documents produced by CVS in response to this subpeona.

The deposition shall commence at 10:00 a.m. on November 29, 2006, at the offices of SAMMARTINO & BERG, LLP, 128 Dorrance Street, Suite 400, Providence, Rhode Island 02903, and shall continue until completed or continued at the sole discretion

of plaintiff. The deposition shall be recorded by stenographic means. You are invited to attend and cross examine.

Respectfully submitted,

Dated: November 7, 2006

Daniel P. Burke (DB 1416)
Georgia Damoulakis (GD 7237)
DANIEL P. BURKE & ASSOCIATES, PLLC
300 Rabro Drive - Suite 131
Hauppauge, New York 11788
Tel: (631) 851-9766
Fax: (631) 851-9766

ATTORNEYS FOR PLAINTIFF
RUSH INDUSTRIES, INC.

## SCHEDULE B

**DOCUMENTS REQUESTED**

1. ALL DOCUMENTS RELATING TO CVS' LONG & STRONG hair care products.

2. ALL DOCUMENTS RELATING TO the design AND development of ALL promotional materials AND packaging RELATING TO CVS' LONG & STRONG hair care products.

3. ALL DOCUMENTS RELATING TO ALL trademark searches RELATING TO LONG & STRONG OR ANY marks that include the words "long", "strong" OR ANY words phonetically similar thereto.

4. ALL DOCUMENTS RELATING TO the amount of money spent by CVS for advertising AND promotion of goods offered in connection with the mark LONG & STRONG in the US on a monthly basis for each month since the date of first use, including but not limited to ANY summary reports.

5. ALL DOCUMENTS RELATING TO when CVS began selling its LONG & STRONG hair care products.

6. ALL DOCUMENTS RELATING TO CVS' knowledge of the hair care product market.

7. ALL DOCUMENTS RELATING TO CVS' knowledge of RUSH's use of the marks LONG 'N STRONG and LONG 'N STRONG EXTRA.

8. ALL DOCUMENTS RELATING TO CVS' knowledge of GARNIER's AND/OR L'ORÉAL USA's use of the marks LONG & STRONG AND/OR LENGTH & STRENGTH.

9. ALL DOCUMENTS RELATING TO CVS' knowledge of LABORATOIRE GARNIER & CIE's rights in the marks LONG & STRONG AND/OR LENGTH & STRENGTH.

10. ALL DOCUMENTS RELATING TO CVS' creation, adoption, selection, AND/OR decision to use the trademark LONG & STRONG.

11. ALL DOCUMENTS RELATING TO ALL products sold bearing the mark LONG & STRONG.

12. ALL DOCUMENTS RELATING TO the identity of purchasers of products sold by CVS in connection with the mark LONG & STRONG.

13. DOCUMENTS sufficient to show unit sales by month AND by product of CVS' products sold in connection with the mark LONG & STRONG.

14. ALL DOCUMENTS RELATING TO net profits by product made by CVS from products sold in connection with the mark LONG & STRONG.

15. ALL DOCUMENTS RELATING TO gross profits by product made by CVS from products sold in connection with the mark LONG & STRONG.

16. ALL DOCUMENTS RELATING TO ALL COMMUNICATIONS, including but not limited to complaints received by CVS, regarding products bearing the marks LONG & STRONG.

17. ALL DOCUMENTS RELATING TO the identity of persons involved in CVS' decision to use the mark LONG & STRONG.

18. ALL COMMUNICATIONS between CVS, GARNIER, LLC, L'ORÉAL USA, L'ORÉAL SA, LABORATOIRE GARNIER & CIE, AND/OR any other entity RELATING TO the marks LONG & STRONG AND/OR LENGTH & STRENGTH.

19. ALL DOCUMENTS RELATING TO CVS' knowledge AND/OR first awareness of RUSH AND/OR PLAINTIFF'S MARKS.

20. ALL DOCUMENTS RELATING TO ANY AND ALL instances AND/OR evidence of actual confusion between CVS AND RUSH communicated to CVS.

21. ALL DOCUMENTS RELATING TO a likelihood of confusion AND/OR a lack of likelihood of confusion between CVS and RUSH communicated to CVS.

22. ALL DOCUMENTS RELATING TO actual or proposed licenses, written or oral agreements, understandings, assignments or consents RELATING TO use of the mark LONG & STRONG or another mark using the mark components "LONG" and "STRONG".

23. ALL DOCUMENTS, including but not limited to reports requested AND/OR received by OR on behalf of CVS, AND/OR information from ACNielson OR ANY other entity that monitors the hair care product market, RELATING TO hair care products first introduced to the U.S. market from January 1, 2000 to the present.

24. ALL DOCUMENTS RELATING TO CVS' introduction of new hair care products in the U.S. hair care market from January 1, 2000 to the present.

25. ALL DOCUMENTS RELATING TO the introduction of new hair care products in the U.S. hair care market from January 1, 2000 to the present.

26. DOCUMENTS sufficient to identify ALL entities who first entered the U.S. hair care product market from January 1, 2000 to the present.

27. DOCUMENTS sufficient to identify ALL hair care products which were first introduced in the U.S. hair care market from January 1, 2000 to the present.

28. ALL DOCUMENTS RELATING TO advertising AND promotion expenditures incurred in relation to ANY AND ALL hair care products first introduced in the U.S. hair care market from January 1, 2000 to the present.

29. ALL DOCUMENTS RELATING TO consideration paid AND/OR received by OR on behalf of CVS for use of the LONG & STRONG trademark.

30. Copies of ALL actual OR proposed advertisements, press releases, brochures, price lists, catalogs, newspaper, magazine AND trade articles, Internet

advertisements, AND websites AND other promotional materials containing OR bearing the mark LONG & STRONG OR used to promote goods bearing OR offered under the mark LONG & STRONG.

31. Copies of ALL DOCUMENTS RELATING TO CVS' expenditures for ALL advertisements AND promotions which included products bearing the mark LONG & STRONG AND ANY summaries thereof.

32. A representative sample of every product, label, wrapper, package, hang tag, sticker, OR box that has been used OR is proposed to be used in connection with ANY goods bearing the mark LONG & STRONG.

33. ALL DOCUMENTS RELATING TO CVS' advertising AND marketing campaigns in the U.S. RELATING TO the mark LONG & STRONG including ad AND product placement AND associated costs.

34. ALL DOCUMENTS RELATING TO the use OR proposed use of LONG & STRONG OR ANY variant thereof by ANY person other than CVS in the U.S.

35. ALL DOCUMENTS RELATING TO Plaintiff, PLAINTIFF'S MARKS, OR goods sold by Plaintiff under PLAINTIFF'S MARKS.

36. ALL DOCUMENTS RELATING TO the date and manner of first use of LONG & STRONG in the U.S. by CVS.

37. ALL DOCUMENTS RELATING TOALL complaints, objections, oppositions, cancellations, administrative proceedings, civil actions or demand letters,

RELATING TO the mark LONG & STRONG AND ALL DOCUMENTS RELATING TO ANY such matters.

38. ALL DOCUMENTS RELATING TO ALL decisions OR settlement agreements regarding ANY actual OR potential dispute, conflict, litigation OR administrative proceeding involving the mark LONG & STRONG.

39. ALL DOCUMENTS, including but limited to mail, deliveries, telephone calls, bills, payments, invoices, memoranda, letters OR ANY other materials, inquiring about, intended for OR referring to Plaintiff, to either of PLAINTIFF'S MARKS OR to Plaintiff's hair care products.

40. ALL DOCUMENTS, including but limited to mail, deliveries, telephone calls, bills, payments, invoices, memoranda, letters OR ANY other materials, inquiring about, intended for OR referring to L'OREAL USA AND/OR GARNIER LLC, to the marks LONG & STRONG AND/OR LENGTH & STRENGTH OR to L'OREAL USA's AND/OR GARNIER LLC's hair care products sold in connection with the marks LONG & STRONG AND/OR LENGTH & STRENGTH.

41. ALL DOCUMENTS RELATING TO actual confusion, the likelihood of confusion OR the lack of likelihood of confusion, deception OR mistake by any person between the mark LONG & STRONG and Plaintiff's Marks OR as to the

source, sponsorship, affiliation OR approval of CVS' AND/OR Plaintiff's goods AND/OR CVS' awareness thereof.

42. ALL DOCUMENTS RELATING TO CVS' knowledge of third party users of the mark LONG & STRONG OR other marks containing the terms "LONG" AND "STRONG" in the U.S.

43. ALL DOCUMENTS RELATING TO ANY search AND/OR investigations which CVS has conducted OR has caused to be conducted of Plaintiff OR of PLAINTIFF'S MARKS.

44. DOCUMENTS sufficient to identify ALL events at which CVS has promoted the mark LONG & STRONG AND the costs associated therewith.

45. DOCUMENTS sufficient to identify the specific advertising placement, (e.g., Time magazine, CBS network TV, New York Times, Smart source magazine), circulation, AND date, on which ALL such advertising AND promotional material has appeared RELATING TO goods sold in connection with the mark LONG & STRONG in the U.S. AND the costs associated therewith.

46. ALL DOCUMENTS RELATING TO this lawsuit (CV 05-4910, pending in the Eastern District of New York).