UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

---------------------------------------------------------------X

In re: Subpoenas Issued to CVS Pharmacy, Inc.,

In the Matter of

RUSH INDUSTRIES, INC.,

Plaintiff,

CIVIL ACTION No.: 06-107ML

-against-

GARNIER LLC, AND JOHN DOES 1-5,

Defendants.

---------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO RUSH INDUSTRIES, INC.'S MOTION TO COMPEL PURSUANT TO FED. R. CIV. 45(C) AND IN REPLY TO RUSH INDUSTRIES OPPOSITION TO CVS PHARMACY'S MOTION TO QUASH THE SUBPOENA OR FOR A PROTECTIVE ORDER**

CVS PHARMACY, INC. (hereinafter, "CVS") respectfully submits this memorandum of law (1) in opposition to RUSH INDUSTRIES, INC.'s (hereinafter, "Rush") motion to compel the production of documents pursuant to Fed. R. Civ. P. 45(c) and (2) in reply to Rush's opposition to CVS's motion to quash the subpoena or for a protective order.

## INTRODUCTION

CVS continues to object to Rush's subpoena on CVS and respectfully requests that this Court quash the subpoena pursuant to Rule 45(c) of the Federal Rules of Civil Procedure or, in the alternative, issue a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. Rush has failed to carry its burden of proving that the information requested in the subpoena is relevant and necessary to the New York litigation such that it would justify the burden of compliance on CVS.

As an initial matter, CVS was forced to bring this motion to protect its rights only after attempting to work out a compromise with counsel for Rush, Daniel P. Burke. Christine Egan, Assistant General Counsel for CVS, first attempted to negotiate an agreement with Mr. Burke in the days after CVS received the subpoena. However, Mr. Burke was unwilling to adjourn the subpoena dates. After several conversations during which Mr. Burke attempted to put off discussion of the matter to a later date as a stall tactic, Ms. Egan referred the matter to outside counsel. (See Affidavit of Christine Egan, annexed to CVS's motion papers.) Megan J. Muoio, with the firm Allyn & Fortuna LLP, contacted Mr. Burke on behalf of CVS on Wednesday, November 22, 2006 to discuss the matter further and to voice CVS's formal objection to the subpoena. In connection with that conversation, Ms. Muoio faxed Mr. Burke CVS's written objections to the subpoena. (See letter annexed as Exhibit C to CVS's original motion papers; see also letter annexed hereto as Exhibit A.) Mr. Burke again attempted to put off discussion of the matter until after the Thanksgiving holiday, even though he was aware of the upcoming deadlines set by the subpoena and the small window of time left CVS to petition this Court for relief. After confirming that Mr. Burke was unwilling to discuss the subpoena, let alone compromise on any issues regarding the subpoena, CVS proceeded with its motion to quash.[1] Because CVS respects the subpoena power of this Court and did not wish to further delay action if it meant the possibility of being in contempt of this Court, CVS moved to quash the subpoena pursuant to Federal Rule 45(c) or, in the alternative, for a protective order pursuant to Federal Rule 26(c).

In its Memorandum of Law in Opposition to CVS's motion to quash, Rush provides vague, flimsy and conclusory justifications for the discovery requested by the subpoena. As

[1] Only after CVS filed its motion to quash did Mr. Burke agree to adjourn the dates for the deposition, obviating the necessity for an emergency hearing and giving Mr. Burke over two weeks to prepare his papers in opposition to CVS's motion to quash and in support of Rush's motion to compel.

discussed in Argument Section I, below, Rush has failed to demonstrate that the discovery sought is sufficiently relevant such that the subpoena is not overbroad, oppressive or burdensome on CVS. As discussed in Section II, below, CVS has shown that the subpoena seeks trade secret information. As discussed in Section III, below, CVS has proved that the subpoena is improper and untimely with respect to the New York litigation. Therefore, CVS respectfully requests that this Court quash the subpoena in its entirety or, in the alternative, issue a protective order relieving CVS from not have to produce documents or appear for a deposition; CVS also requests that this Court deny Rush's motion to compel in its entirety.

## ARGUMENT

### I. Rush Has Failed To Demonstrate that the Discovery Sought is Sufficiently Relevant and Necessary to Outweigh the Burden on CVS

Rush's numerous purported justifications for the subpoena fail to demonstrate that the discovery sought is sufficiently relevant and necessary to outweigh the overly broad, oppressive, and unduly burdensome nature of the requests on CVS. On a motion to quash a subpoena, this Court should weigh the burdensome nature of the subpoena with the legitimate necessity for the discovery. Here, when Rush's so-called justifications for the information are weighed against CVS's legitimate objections to the irrelevant, unnecessary and burdensome discovery, the subpoena fails.

Rush fails to recognize and meet the higher burden placed on parties seeking discovery from non-parties to a litigation. See Cusumano v. Microsoft Corp., 162 F.3d 708 (1st Cir. 1998). Rush cites to Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, in support of the proposition that wide-ranging discovery is allowed "to help define and clarify the issues." While that may be the case as between the parties, the standard is higher and more difficult to meet when a party to

litigation requests discovery from a third-party.[2] Under the standard set forth in Cusumano, this Court should relieve CVS of the extraordinary burden of complying with Rush's extensive and unreasonable discovery requests.

Although Rush claims that the deposition component of the subpoena is not burdensome and that CVS need only produce one individual to testify as to the topics outlined in the subpoena, Rush fails to appreciate the grand scope of its discovery requests. These requests touch on not only the private label division that is in charge of certain CVS products, but also the advertising, marketing, finance and development departments that work in conjunction with the private label department to develop CVS products. Moreover, gathering documentation from all of these diverse departments would constitute a serious burden on CVS. Rush's claim that the subpoena does not burden CVS because Rush will pay CVS's copying costs sidesteps the fact that gathering of the documents, the preparation of the employees for a deposition, and the deposition itself will be a serious burden on CVS.

As detailed below, Rush's explanations for the discovery requested in the subpoena are flimsy and insufficient to justify the undue burden the requests would place on CVS.

A. Topics 1, 2, 10, 11, 17, 30, 32-34

Topics 1, 2, 10, 11, 17, 30, 32, 33, and 34 concern CVS's use, development, advertising, marketing, and labeling of products with the phrase "Long & Strong." None of the requests mention Garnier or any Garnier products.

As justification for these requests, Rush claims that it needs the information to rebut

---

[2] Additionally, Oppenheimer involves discovery sought by the plaintiff representative of members of a class in a securities claim that sought information regarding class members from the defendant investment fund; the case does not involve discovery sought from a third party and the holding relies on Federal Rule 23(d), a class action provision, rather than the discovery rules to compel disclosure of the information.

Garnier's position that it is not aware of any other entity using the phrase "Long & Strong" and to prove collusion between Garnier and CVS. This justification is not acceptable because CVS has no knowledge as to Garnier's knowledge. If Rush seeks to gather information regarding Garnier's knowledge of other products in the market, Rush should ask Garnier those questions. Additionally, Rush's quest for information regarding "collusion" between CVS and Garnier in these requests and several below is not relevant to the New York litigation since none of Rush's trademark infringement claims against Garnier involve CVS. However, if Rush believes that Garnier "colluded" with CVS, Rush should ask Garnier about such behavior. To require CVS to produce documents and testimony (which CVS does not believe exists at all) when that same information could be culled from the defendant in the New York action would place an unfair and oppressive burden upon CVS.

Even if Rush's justification were legitimate, which CVS strenuously contends it is not, the request is radically overbroad. In seeking evidence of "collusion" between CVS and Garnier, Rush would seek to discover all design, promotional, advertising, marketing, and labeling information about CVS products.

Rush also contends that it requires this information from CVS to rebut Garnier's defense that Rush's lost profits were a result of other competition. However, it would be Garnier's burden to affirmatively prove this defense in the New York litigation, if it so chose. Rush's overbroad attempts to gather unrelated information from CVS in order to anticipate a defense from Garnier is not legitimate and not sufficiently necessary to impose a burden on CVS.

B. Topic 3

Topic 3 concerns all trademark searches (presumably conducted by CVS) relating to the

words "long" and "strong" separately and in combination. Rush claims that this information is necessary to discover whether CVS believed Garnier had rights to the phrase "Long & Strong" and whether there was collusion between CVS and Garnier. Again, CVS's beliefs are not relevant to the litigation between Rush and Garnier and any information about Garnier's use of the phrase "Long & Strong" can be garnered from Garnier itself. Rush's accusatory requests on CVS belie Rush's claim that it does not intend to bring suit against CVS.

C. Topics 5, 36

Topics 5 and 36 concern the dates CVS began selling certain products. Rush claims that it needs this information to discover whether Garnier consented to CVS's use of the phrase "Long & Strong." Again, Garnier is the proper source for this information, not non-party CVS, which would be burdened by the production of documents and testimony regarding these requests; instead, Rush has chosen to subpoena CVS and burden CVS with the responsibility of producing information that it can get from Garnier. If Rush has asked these questions of Garnier but has not received its desired answers that must be address between Rush and Garnier; CVS should not be involved to further Rush's fishing expedition.

D. Topic 6

Deposition Topic 6 concerns CVS's knowledge of the hair care market. Rush claims that it needs this information to determine whether the witness being produced is knowledgeable and properly capable of responding to the questions posed during the deposition. However, Document Request 6 also seeks documents relating to CVS's knowledge of the hair care market, illustrating that Rush's request for this information is an attempt to garner information about CVS and its business rather than about a potential witness's qualifications. Regardless, if required to appear at a deposition pursuant to this subpoena, like any subpoena, CVS would

produce an individual with knowledge as to the topics at hand, further invalidating the need for this line of questioning from Rush.

E. Topics 7-9, 19, 35, 43, 46

Topics 7, 8, 9, 19, 35, 43 and 46 all concern CVS's knowledge of the New York litigation, the parties therein, their products and their rights to use certain marks. Rush admits in its Memorandum of Law that these discovery topics specifically seek to determine CVS's knowledge about Garnier's products and rights in certain marks, although the deposition topics are certainly broader than that. Rush further contends that Topics 19, 35, 43 and 46 are relevant to establish "collusion" between Garnier and CVS or, improbably, "CVS and any other entity." Again, CVS's knowledge of Garnier's products and CVS's contacts with possibly limitless other entities is not relevant or necessary to the New York litigation; further, Garnier is the appropriate party to address questions regarding its contacts with other parties such as CVS since Garnier is a party to the New York litigation.

F. Topics 13-15

Topics 13, 14 and 15 concern CVS's unit sales, net profits and gross profits of certain CVS products. Rush claims that it needs this information to prove its damages as against Garnier in the New York litigation. However, CVS's sales of its own products have no bearing on the alleged infringement by Garnier and Rush's lost sales.[3] In order to carry its burden regarding lost profits, Rush must produce evidence of actual confusion on the part of the consumer, which is not indicated by the sales or profit figures for CVS products. Also, Rush's anticipation of a defense that must be affirmatively proven by Garnier is not sufficiently

[3] Oddly, Rush cites to Lon Tai-Shing Co., Ltd. v. Koch + Lowy, an unpublished opinion from the United States District Court for the Southern District of New York that involves a trademark infringer's duty to prove the overhead expenses that are attributable to the infringing profit in order to reduce its profit damages. The case is not on point here.

necessary to impose the burden of discovery on non-party CVS. Additionally, these requests are overbroad in that they do not set forth any time limit for the requests and seek open-ended discovery of CVS's sales and profit figures.

G. Topics 16, 20, 21, 37, 39-41

Topics 16, 20, 21, 37, 39, 40 and 41 concern what Rush alleges to be actual confusion between CVS products and those of Rush and the defendant in the New York litigation. Rush baldly claims that the information sought is relevant to the New York litigation and asserts that if no such information exists, CVS's response will not be burdensome. However, Rush's failure to craft a legitimate justification for these several requests demonstrates how frivolous they are with respect to CVS and the preparation of any response to these requests would be an oppressive burden in the face of the sheer lack of necessity of the information to the current dispute between Rush and Garnier in the New York litigation.

H. Topic 18

Topic 18 concerns communications between CVS and Garnier and its related corporate entities relating to the phrase "Long & Strong." Rush claims that this information is necessary to prove "collusion" between CVS and Garnier. First, Rush could easily obtain information regarding contacts between CVS and Garnier from Garnier itself within the New York litigation. Second, CVS is not a party to the New York litigation, so the alleged "collusion" is irrelevant to Rush's claims and the accusatory manner in which Rush asserts that CVS "colluded" with Garnier makes Rush's subpoena inappropriate.

I. Topics 22, 29, 38, 42

Topics 22, 29, 38 and 42 concern licensing and consideration paid by CVS for rights to

the phrase "Long & Strong," decisions and settlement agreements regarding any dispute or litigation over the phrase, and CVS's knowledge of third-party users of the phrase. Rush claims that this information is necessary to prove communication between CVS and Garnier so that Rush can determine "Garnier's mindset of its rights." As an initial matter, only Topics 22 and 29 have the potential, albeit remote, to involve Garnier at all; Deposition Topics 38 and 42 concern CVS's knowledge of issues not related to Garnier and its mindset. However, in order to avoid burdening non-party CVS with these overbroad requests to gain insight into Garnier's "mindset," Rush should direct these inquiries to Garnier.

J. Topics 4, 12, 23-28, 31, 33, 44-45

Topics 4, 12, 23, 24, 25, 26, 27, 28, 31, 33, 44 and 45 concern CVS's advertising, marketing and tradeshow placement of CVS products, CVS's introduction of all hair care products into the market, and general topics involving the hair care market, introduction of new products, and advertising of new products. Rush claims that the information on the hair care market is necessary to rebut a defense by Garnier that Rush's lost profits are attributable to outside forces. However, Rush's anticipation of this defense does not justify the burden on CVS to produce material that is irrelevant to the New York litigation or more easily found elsewhere. If Rush requires information on the hair care market to determine which products compete with its own, it must consult with an industry expert rather than impose upon CVS an undue burden to open up its entire business operation to this fishing expedition.

## II. CVS Has Proven that the Subpoena Seeks Trade Secret Information

By Rush's own admission, it seeks information related to all aspects of CVS's operation, including its financial information, advertising and marketing strategies, decisions for the development of products, and relationships with vendors and customers that CVS considers to be

trade secret information. Under the definition set out in United States v. International Business Machines Corp., 67 F.R.D. 40, a case from the Southern District of New York cited by Rush in its Memorandum of Law, a trade secret is anything "which is used in one's business, and which gives him an opportunity to gain an advantage over competitors who do not know or use it." Here, CVS's particular method for conducting all areas of its business, from its marketing strategies, financial profiles and the methods by which it deals with other members of the industry, is a trade secret.

Rush's broad claim that the protective order in the New York litigation will be sufficient to protect CVS's trade secrets is inadequate. Rush fails to produce the protective order so that CVS and this Court may scrutinize it in order to ensure it would safeguard CVS's information. See The Stanley Works v. Newell Co., 1992 WL 229652 *5-*6 (N.D.Ill. 1992). Moreover, Rush ignores the fact that CVS may not wish to disclose this information to the parties to the New York litigation itself, as is its right.

## III. CVS Has Proven that the Subpoena is Improper and Untimely

As detailed above, Rush's own justifications for the discovery sought by the subpoena are accusatory toward CVS and seek a wealth of information regarding CVS's business, such that Rush seems to be aiming to bring suit against CVS for what it perceives to be CVS's infringement of Rush's alleged marks. Although Rush claims that it "has no present intention" to bring suit against CVS in its Memorandum of Law, Rush does not indicate that it has *no* intention of bringing suit against CVS, nor does Mr. Burke swear to that in his Affidavit. CVS still contends that Rush has issued this subpoena in an attempt to bootstrap CVS into this or another lawsuit; the discovery sought will form the basis for another claim and, therefore, this

subpoena serves as an improper use of the pre-litigation discovery procedures proscribed by Federal Rule 27(a).

Additionally, Rush's subpoena on CVS is untimely. The discovery schedule set by Magistrate Judge E. Thomas Boyle in the New York litigation at the July 24, 2006 conference is set out in the November 17, 2006 letter from Garnier's attorney, which is annexed to CVS's original moving papers as Exhibit D, and in the September 1st and 20th letters from Garnier's attorney, which are annexed hereto as Exhibits B and C, respectively. These documents illustrate the staggered set of deadlines for discovery, which are similar to the deadlines imposed by Magistrate Boyle previously in the case. (See Joint Discovery Plan, annexed hereto as Exhibit D.) At the July 24th conference, Judge Boyle set a complete discovery end date of November 30th, but instructed the parties to count back from that date in order to arrive at the other deadlines.

Although Rush claims that the Conference Order annexed to its Memorandum of Law at Exhibit D to its motion papers definitively sets a fact discovery end date of November 30, 2006, the previous orders in the New York litigation and Garnier's letters illustrate that Magistrate Boyle set November 30, 2006 as the end date for all discovery, with other deadlines leading up to that date and fact discovery ending by September 12, 2006. Rush's confusion stems from the fact that Judge Boyle allowed supplemental responses to fact discovery demands to be served after the September 12th fact discovery end date (see Exhibit D to CVS's original motion papers); however, this does not allow for the service of a new subpoena on a third party such as CVS.

**Conclusion**

CVS respectfully requests this Court issue an Order quashing the non-party subpoena pursuant to Rule 45(c) of the Federal Rules of Civil Procedure or, in the alternative, issue a

Protective Order pursuant to Rule 26(c), ordering that the documents not be produced and the deposition not be held. Additionally, CVS respectfully requests that this Court deny Rush's motion to compel in its entirety.

Dated: December 15, 2006
Providence, Rhode Island

Respectfully submitted,

EDWARDS, ANGELL PALMER
& DODGE LLP

By: /s/ Paul E. Dwyer, Jr.

Paul E. Dwyer, Jr. (#3956)
Attorneys for CVS Pharmacy, Inc.
2800 Financial Plaza
Providence, RI 02903
(401) 528-5851
(401) 276-6611 (fax)

**CERTIFICATE OF MAIL**

I hereby certify that I have this 15th day of December, 2006 sent via electronic mail and U.S. Mail a copy of the foregoing to the following counsel of record:

Daniel P. Burke, Esquire
Georgia Damoulakis, Esquire
Daniel P. Burke & Associates, PLLC
300 Rabro Drive – Suite 131
Hauppauge, New York 11788

Robert Sherman, Esquire
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, New York 10022

/s/ Paul E. Dwyer, Jr.
Paul E. Dwyer, Jr.